1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8    LESTER LAWSHEA,                          CASE NO.  06-cv-0037 TAG

9                    Plaintiff,               MEMORANDUM OPINION AND ORDER
                                              ON PLAINTIFF'S APPEAL FROM
10   _____vs.                                ADMINISTRATIVE DECISION

11   MICHAEL J. ASTRUE,                        ORDER DIRECTING THE CLERK TO
     Commissioner of Social Security,[1]_____ ENTER JUDGMENT FOR THE DEFENDANT
12   _____          AND AGAINST THE PLAINTIFF
                     Defendant.
13   _____/

14

15          Plaintiff Lester Lawshea ("Claimant") seeks judicial review of an administrative decision

16   denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

17   ("the Act"), 42 U.S.C. § 1381 et seq.  Pending before the Court is Claimant's appeal from the

18   administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed his

19   complaint on January 9, 2006 (Doc. 1), and his opening brief on January 22, 2007.  (Doc. 18).  The

20   Commissioner filed his response opposing the appeal on February 21, 2007.[2]  (Doc. 21).  Claimant did

21   not file a reply brief.  (See Docket Sheet).

22          Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to

23   proceed before a United States Magistrate Judge, and, by an order dated December 16, 2006, this action

24   was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 15).

25          [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
     Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

26

27          [2]  Both Claimant and the Commission refer to their briefs as motions for summary judgment. (Docs. 18, 21). .
     Although briefs filed in Social Security cases previously were deemed summary judgment motions, for several years this
     Court has termed the documents as "opening briefs," "responses" or "oppositions," and, "reply briefs."  This
28   memorandum opinion and order continues this trend.

**JURISDICTION**

On March 27, 2002, Claimant protectively filed an SSI worksheet. (AR ("Administrative Record") 85-88). On April 27, 2002, Claimant's SSI application, signed and dated April 18, 2002, was filed. (AR 89-96). His application was denied initially and on reconsideration. (AR 59, 67, 253, 259).

After timely requesting a hearing, Claimant and her counsel appeared before Administrative Law Judge ("ALJ") Bert Hoffman on June 24, 2003. (AR 80, 355-383). On January 7, 2004, the ALJ issued a written decision ("2004 decision") finding that Claimant was not disabled for purposes of SSI. (AR 240-249). On April 23, 2004, the Appeals Council granted Claimant's request for review, vacated the 2004 decision, and remanded the case to ALJ Hoffman with directions that he reevaluate Claimant's residual functional capacity and reconsider Claimant's ability to perform specific jobs in light of his mental and physical limitations. (AR 267-270). The ALJ held a second hearing on December 14, 2004, at which time he heard testimony from a vocational expert ("VE"), Kenneth Ferra (AR 384-397). On January 18, 2005, ALJ Hoffman issued a decision (the "2005 decision") in which he again concluded that Claimant was not eligible for benefits under Title XVI of the Act. (AR 12-22). The Appeals Council denied Claimant's request for review on November 4, 2005. (AR 7-9). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). To initiate an appeal in the district court, Claimant must file a complaint within sixty (60) days of the Appeals Council's decision. 42 U.S.C. § 405(g); (AR 8). On January 9, 2006, Claimant timely filed his complaint. (Doc. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here. In his SSI application, Claimant alleged that he could not work because of his heart and related problems, such as shortness of breath and chest pains, following his 1997 cardiac arrest. (AR 89, 129-132). Claimant further stated that he felt isolated and as though he were giving up, but also found it stressful to socialize. (AR 136).

Claimant and his attorney were present at the 2004 hearing. (AR 384). In lieu of having Claimant testify and provide the same answers as he had in the 2003 hearing, Claimant's attorney

presented an opening statement summarizing the pertinent facts.  (AR 386-387).  According to his attorney, Claimant was born on June 16, 1964, making him 40 years old on the date of the ALJ's 2005 decision, and he had completed ten years of school.  (AR 386; but see AR 106 (Claimant's application paperwork stating that he completed the eleventh grade)).  Claimant alleged disability due to heart and back problems.  (Id.).  Claimant was involved in a motor vehicle accident and a train wheel crushed his right foot when it ran over the foot.  (AR 386-387).  The attorney also reported that Claimant suffered from depression and fatigue. (AR 387).  Claimant's attorney referenced a medical consultation, in which the doctor found that Claimant had heart problems, hypertension, shortness of breath, a crush injury to his right foot, degenerative joint disease, chronic back pain, coronary artery disease, and problems with hiss right knee and foot.  (Id.).  In addition, during his opening statement, the attorney referred to two psychological evaluations, noting that the first consultant found that Claimant's judgment and insight were impaired and he had an adjustment disorder, depression, and a Global Assessment of Functioning ("GAF") of 45.  The attorney reported that the second psychological consultant found that Claimant had an  IQ of 59, and had moderate limits in almost all areas.  (Id.).  The attorney finished his opening statement and formally accepted Kenneth Ferra as a vocational expert.  (Id.).

The ALJ asked VE Ferra whether there were jobs available in the national economy that the individual described below could perform:

> a 40-year-old person . . . with a limited education . . . with an assigned residual, physical residual functional capacity [sic] of being able to lift 20 pounds occasionally, 10 pounds frequently, stand, walk, or sit for six hours in an eight-hour day, engage in limited pushing and pulling with the lower extremity, limited ability to climb, balance, kneel, stoop, crouch, and crawl.  Further, we have further nonexertional limitations of a moderate difficulty in maintaining social functioning, person without significant difficulties in concentration and persistence hours, pace is slower than average.  The person who is able to understand, carry out, remember simple instructions.  Pace - - who is moderately limited in his ability to respond to coworkers, supervisors and the public, moderately limited in his ability to respond to appropriate and usual work situations involving attendance and safety, moderately limited in his ability to deal with changes in a work, in a routine work setting and when I use the term moderate, it should be defined as follows: . . .With a moderate limitation in an area, an individual is still able to function satisfactorily, less than average but satisfactorily.

(AR 387-388).

The VE confirmed that such a person would be limited to unskilled work.  (AR 388).  VE Ferra testified that, given the ALJ's definition of "moderate," there were many unskilled jobs available to the

described individual.  (<u>Id.</u>).  On being asked for examples of jobs that the individual could perform, the VE testified that he could do Claimant's past relevant work as an activities leader or a car wash attendant, as long as neither job varied from the light exertional limitations.  (AR 389).  VE Ferra's other examples included a cleaner and a hand packer, of which there were, respectively, 16,000 and 12,000 jobs in the California area.  (<u>Id.</u>).  The VE testified that his definitions of both of these jobs did not differ from the Dictionary of Occupational Titles' ("DOT") definitions.  (<u>Id.</u>).  With respect to the position of a car wash attendant, the VE stated that there were approximately 7,000 jobs in California.  (<u>Id.</u>).  He acknowledged that he had no numbers for activities leaders.  (AR 390).

Claimant's attorney asked VE Ferra what the term "moderately limited in functions" means to a vocational expert.  (<u>Id.</u>).  The VE responded that the term indicates that there would be a "significant degree of impairment . . . that would reduce the work functioning . . . between 25 to 30 percent."  (<u>Id.</u>).  The attorney, instructing the VE to use his definition of moderate limitations, asked whether Claimant could work.  (AR 390-391).  He presented Claimant as suffering from a severe mental impairment, with an IQ of 59 and a GAF of 45.  (AR 391).  In addition, Claimant would find it difficult to squat, climb, or walk on uneven ground for an extended period of time, but he could lift and carry 50 pounds occasionally and 25 pounds frequently.  (<u>Id.</u>).  With respect to his mental limitations, the attorney stated

> Due to his limited comprehension, he has moderate difficulty of maintaining social functioning. He has no significant difficulties of concentration and persistence, however, his pace is slower than average.  He is not prone to repeated episodes of emotional deterioration in work-like situations and he is able to understand, carry out, remember simple instructions.  He is, however, moderately limited in his ability to respond appropriately to coworkers, supervisors and the public.  He is also moderately limited in his ability to respond appropriate [sic] to usual work situations involving attendance and safety due to his learning disorder and borderline intellectual functioning which negatively impact his ability to understand instructions.  He is moderately limited in his ability to deal with changes in routine work settings and, at his current level of functioning, he is not able to handle his funds in his own best interest.

(AR 391-392).

Upon being asked if there were jobs that the above-described person could perform, the VE asked him to elaborate on the degree to which the Claimant's pace was slowed.  (AR 392).  The attorney responded that, if 100% represent an average pace, Claimant's pace would be 50%, or one-half of what an average person could do.  (<u>Id.</u>).  VE Ferra responded that such a person would not be able to work. (<u>Id.</u>).  The VE testified that he should have ascertained how slow the individual's pace was when the

4

1  ALJ presented his hypothetical question, because 50% is a significant decrease.  (Id.).  The VE added

2  that there were no jobs available if the individual could perform at 50% of regular pace, but, in response

3  to the ALJ's question, such a person would be able to work if he could perform as well as 50% of all of

4  the workers, but could not perform as well as the top 50% of the workforce.  (Id.).

5      In closing, the attorney reminded the ALJ that Claimant's foot had been crushed and he suffered

6  from knee problems, which interfered with his ability to stand for prolonged periods of time.  (AR 396).

7  He contended that Claimant would have difficulties being a car wash attendant, cleaner, or hand packer

8  because of the walking requirements inherent in these jobs, adding that Claimant had needed a cane for

9  quite a while.  (Id.).

## RELEVANT LEGAL FRAMEWORK

11      To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be "unable

12 to engage in any substantial gainful activity by reason of any medically determinable physical or mental

13 impairment which can be expected to result in death or which has lasted or can be expected to last for

14 a continuous period of not less than twelve months." 42 U.S.C.§ 1382c(a)(3)(A).  The Act also provides

15 that a claimant shall be determined to be under a disability only if his impairments are of such severity

16 that he "is not only unable to do his previous work but cannot, considering his age, education, and work

17 experience, engage in any other substantial gainful work which exists in the national economy."

18 42 U.S.C. § 1382c(a)(3)(B).

## STANDARD OF REVIEW

20      Congress has provided a limited scope of judicial review of a Commissioner's decision.  See

21 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

22 the determination is not based on legal error and is supported by substantial evidence.  See Ukolov v.

23 Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005)(citations omitted); Jones v. Heckler, 760 F.2d 993, 995

24 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987).

25 "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of

26 fact are supported by substantial evidence."  Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983)

27 (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger,

28 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888

F.2d 599, 601-602 (9th Cir. 1989); <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. <u>Mark v. Celebrezze</u>, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (quoting <u>Kornock v. Harris</u>, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. <u>Richardson</u>, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

## **SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act. 20 C.F.R. § 416.920. Step one determines whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i), (b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death, or continuously lasted or be expected to last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. <u>Id.</u>

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be

so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled.  20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d).   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past.  If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience.  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the  benefits claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ADMINISTRATIVE FINDINGS

In his 2005 decision, the ALJ found, at step one, that Claimant had not engaged in any substantial gainful activity since he filed his March 27, 2002, SSI application.  (AR 15, 21).  At step two, ALJ Hoffman found that Claimant suffered from the following severe impairments: "hypertensive cardiomyopathy, degenerative joint disease, chronic back pain, an adjustment disorder with depressed mood, and borderline intellectual functioning[.]"  (AR 16, 21).  At step three, he found that Claimant's ///

severe impairments, singly or in any combination, did not meet or equal any listing under 20 C.F.R. Pt. 404 Subpt. P App. 1.  (AR 16, 21).

The ALJ then summarized the medical and psychological records, which included Claimant's attempt to obtain mental health treatment in a special program at Kern County Mental Health, two psychological examining consultations, two medical examining consultations, and the assessments of the DDS physicians.  (AR 16-18).  ALJ Hoffman noted that he gave "great weight" to the consulting psychiatrists and "little weight" to the DDS physicians, who had not had the advantage of interviewing or testing Claimant. (AR 18).  The ALJ next stated that he did not find Claimant's subjective complaints about which he testified at the first administrative hearing entirely credible under Social Security Ruling ("SSR") 96-7p, adding that there was a lack of medical evidence to support his testimony.  (Id.).  ALJ Hoffman addressed Claimant's testimony in detail, and concluded that Claimant's impairments were not as limiting as he alleged.  (AR 18-19).  The ALJ discussed the basis for this finding, which included, inter alia, Claimant's reported recent work requirements, his daily activities, and the multiple inconsistencies between his testimony and his application documents.  (AR 19).  The ALJ determined that Claimant retained the residual functional capacity ("RFC") to lift 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for 6 hours in an 8 hour day; to engage in limited pushing and pulling with his legs; and to crouch, climb, crawl, balance, and stoop occasionally.  (AR 19-20).  The ALJ added that Claimant had moderate difficulty in maintaining social functioning; a slower than average pace; a moderate limitation in his ability to respond appropriately to usual work situations involving attendance and safety and in dealing with changes in a routine setting; had no significant problems with concentrating, persistence, understanding, carrying out, and remembering simple instructions; but was moderately limited in his ability to respond appropriately to supervisors, coworkers, and the public.  (AR 19-21; see AR 231-239, 320-323 (examining consultant psychological evaluations)).  The ALJ added that he defined 'moderately limited' in accordance with Social Security form HA-1152 (Medical Source Statement of Ability to do Work-Related Mental Activities), stating that it meant that Claimant "is still able to function satisfactorily."  (AR 20).  He found that Claimant had the RFC to perform a wide range of light, unskilled work, which was not reduced significantly by his nonexertional limitations.  (AR 21, 22).  The ALJ reported that the VE testified that there were a

1   significant number of jobs that an individual with Claimant's limitations and RFC could perform.  (AR

2   20).

3          At step four, the ALJ found that Claimant could not perform his past relevant work.  (AR 20, 21).

4   Given an exertional capacity for light, unskilled work that was not significantly reduced by Claimant's

5   nonexertional limitations, and in light of Claimant's age, education, and work experience, the ALJ noted

6   that a conclusion of "not disabled" would be directed under section 416.969 of Regulations No. 16 and

7   Rule 202.17 of the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2,

8   Table 2.  (AR 20-21).  The ALJ, therefore, concluded that Claimant is not disabled under the Act and,

9   accordingly, not eligible for SSI payments.  (AR 21).

10                                          **ISSUES**

11         Claimant raises one issue in his opening brief for consideration:

12         The ALJ improperly defined "moderate limitations" and its implications with respect to the

13  ability to work.  (Doc. 18).

14         As discussed above, this Court must uphold the Commissioner's determination that a claimant

15  is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence

16  in the record as a whole to support the decision.

17                                       **DISCUSSION**

18         Claimant contends that, although the ALJ acknowledged that Claimant was moderately limited

19  because of his mental impairments, he erroneously went outside of the record and used a lay definition

20  of "moderate" when he defined it as "an individual [who] is still able to function satisfactorily, less than

21  average but satisfactorily."  (Doc. 18, pp. 3-4)(brackets added).  Claimant adds that there is nothing in

22  the Social Security regulations to support the ALJ's definition, but cites to several cases that consider

23  a moderate impairment as one that interferes with the individual's ability to work between thirty and fifty

24  percent of the time.  (Doc. 18, p. 4).  Claimant notes that the vocational expert who testified at his

25  hearing, stated that he, personally, defined "moderate" as "a reduction in workplace functioning of 24-

26  40%," which would render a person incapable of sustaining a job and, accordingly, disabled.  (Doc. 18,

27  p. 5).

28  ///

1    The Commissioner responds that, under the applicable regulations, "moderate" occupies the third

2    point on a five-point scale – between "mild" and "marked" – but is not otherwise defined. (Doc. 21, pp.

3    4-5). He adds that a "marked" limitation is one that is "more than moderate but less than extreme,"

4    while an "extreme" limitation precludes an individual's ability to work. (Doc. 21, p. 4). The

5    Commissioner cites case law that presents the same definition of moderate as did the ALJ in the instant

6    case. (Doc. 21, p. 4). In addition, he asserts that the ALJ did not err in taking administrative notice of

7    the definition of "moderate" in Social Security Form HA-1152, which is the "Medical Source Statement

8    of Ability To Do Work-Related Activities (Mental)."[3] (Doc. 21, p. 5). Alternatively, the Commissioner

9    contends that the dictionary definition of "moderate," which he provides, would constitute a "common

10   sense understanding" of the word more consistent with the ALJ's definition than with that of Claimant.

11   (Id.).

12   Because it is undisputed that Claimant was moderately limited due to his mental impairments, and

13   his physical RFC is not at issue, the medical and psychological evaluations prepared by examining

14   consultants will not be discussed herein.

15   The Social Security regulations do not define "moderate" as it applies to functional limitations

16   resulting from mental impairments. Cantrell v. McMahon, 237 Fed. Appx. 321, 322, 2007 WL 557567,

17   *2 (5th Cir. Feb. 15, 2007); 20 C.F.R. §§ 416.920a(c)(4),[4] Pt. 404, Subpt. P, App. 1, § 12.00(c). The

18   guidance provided by the pertinent regulations directs the adjudicator to consider the following four

19   areas when he evaluates the claimant's limitations: (1) activities of daily living; (2) social functioning;

20   (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3)

21   and (4). With respect to the first three functional areas, the regulation dictates the use of a five-point

---

[3] The Commissioner did not include a copy of this form with his response and the undersigned was not able to obtain it via the website he provided. (See Doc. 21, p. 5 n.4) (website to obtain form).

[4] 20 C.F.R. § 416.920a is identical to 20 C.F.R. § 404.1520a, both of which are entitled "Evaluation of mental impairments." Section 416.920a is used when claimant applies for SSI, while § 404.1520a applies to claims for disability benefits. 20 C.F.R. §§ 404.1, 416.101.

scale, which contains the delineations: none, mild, moderate, marked, and extreme.[5]   20 C.F.R. § 916.920a(c)(4).  Only the last point on the scale – extreme – represents a degree of limitation that is incompatible with the ability to do any gainful activity.  Id.   Section 916.920a(c)(3) refers to Listing 12.00C under 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Listing 12.00 encompasses mental disorders, and 12.00C – "Assessment of severity" – discusses in detail the meaning, and sources for evaluation, of, the four areas used to assess functional limitations from mental impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C ("Listing 12.00C").  Listing 12.00C does not define "moderate," but states that it is lower on the five-point scale than a marked limitation, which seriously interferes with a claimant's ability to "function independently, appropriately, effectively, and on a sustained basis."  Id.  "Marked" is not as debilitating as "extreme"; thus, a moderate limitation is a relative term indicating an impairment that interferes with a claimant's functional limitations more than mildly on the five-point scale, but less than markedly and extremely.  Id., 20 C.F.R. § 416.920a(c).  Based on the above, the regulations provide little assistance in defining "moderate," except as it relates to other descriptions of functional limitations due to mental impairments.

Although Claimant cites case law to support his definition of "moderate," a review of those cases reveals that, for the most part, the courts apply definitions used by other professions, whose goals are not the same as those of the Social Security Administration.  For example, Claimant cites an unpublished District Court case from Pennsylvania, which, in turn, cites a Third Circuit decision, for the proposition that if a claimant is "moderately limited," he is incapable of performing the job for at least one third of the day.  See Walls v. Barnhart, Case No. CIV.A. 01-2361, 2002 WL 485641, *6 (E.D. Pa. March 28, 2002)(citing Morales v. Apfel, 225 F.3d 310, 314 n.4 (3d Cir. 2000)).  The court notes in Morales that the above definition was used by the vocational expert, and it does not rely on that definition to reverse the District Court's order affirming the Commissioner's refusal to grant disability benefits to Morales. Morales, 225 F.3d at 317-20.  Instead, the court remanded the case, ordering that benefits be granted, on the basis that the ALJ erroneously rejected the opinion of Morales' treating mental health

---

[5]  Neither of the reports from Claimant's examining psychiatric consultants mention that he had any episodes of decompensation.  See AR 239, 322-23.  In the more recent assessment, the consultant stated, "[Claimant] is not prone to repeated episodes of emotional deterioration in work-like situations in his current mental status."  AR 239.

1  professional, who concluded that Morales was seriously limited and not able to work, without providing

2  adequate reasons. Id. The District Court subsequently applied the definition in the Morales footnote

3  as a binding rule of law in the Social Security appeal before it, which, given that it was a note made by

4  the Morales panel during the factual recitation in that decision, does not appear to have been the

5  appellate court's intention. Walls, 2002 WL 485641, *6; see Morales, 225 F.3d at 314 n.4, 317-20.

6  Claimant also cited a decision from the District Court for the Central District of California in

7  which the court determined that slight to moderate impairments limited the ability to work by 20%, and

8  moderate impairments resulted in limitations of 30%. Payan v. Chater, 959 F.Supp. 1197, 1204 (C.D.

9  Cal. 1996). In Payan, however, the court relied on California definitions under the state's Workers

10 Compensation laws as opposed to applicable Social Security rules and regulations. Id. at 1203-04, n.

11 12. Finally, Claimant cited Beckstrand v. Comm'r of Soc. Sec., a District Court case that relies, in part,

12 on regulations and procedures that are no longer used by the ALJ. 127 F. Supp.2d 820 (E.D. Mich.

13 2000). Although the Beckstrand court granted summary judgment to the appellant, it did so for several

14 reasons, not the least of which was the ALJ's rejection of much of the treating and consulting physicians'

15 assessments finding that appellant could not work for reasons other than his mental health problems.

16 Id. at 824. The Beckstrand court, however, also relied on the Psychiatric Review Technique Form

17 "PRTF" he completed, in which he reported that he "often" had difficulties with concentration,

18 persistence, or pace. Id. at 823. In accordance to the former mental health regulation, 20 C.F.R. §

19 404.1520a(b)(3) and (c)(1), "often" indicated that the claimant may not be able to work. Id. at 826.

20 However, more than this was required to determine a claimant's RFC and ascertain whether he could

21 work. Id., n.4. Moreover, the regulation cited to was amended in 2000, and PRTFs no longer are

22 utilized during the administrative proceedings. See 65 Fed. Reg. 50,746, 50,746-40,748, 2000 WL

23 1173632 (F.R.) (Aug. 21, 2000).

24 The Commissioner, in contrast, cited case law that defined "moderate" similarly to the ALJ's

25 definition in the instant case, and often referring to a Social Security form.[6] Cases from Eighth Circuit,

27 [6] While Claimant is correct in asserting that the ALJ cannot go outside of the administrative record in order to make his own diagnosis and assessment of a claimant's medical condition, Williams v. Richardson, 458 F.2d 991, 992 (5th Cir. 1972), the ALJ can take administrative notice of Social Security regulations, forms, etc. See Johnson v. Shalala,

12

1   the Northern District of Illinois, and the Southern District of New York have held that a person with a

2   moderate mental impairment "is still able to functional satisfactorily." Lacroix v. Barnhart, 465 F.3d

3   881, 888 (8th Cir. 2006); Hert v. Barnhart, 234 F.Supp.2d 832, 838 (N.D. Ill. 2002); Rivera v. Barnhart,

4   No. 05 Civ. 6638(SAS), 2006 WL 1227276, *3 n.63 (S.D.N.Y. May 5, 2006). Both Lacroix and Hert

5   refer to the definition of moderate on a form, or an evaluation form. Lacroix, 465 F.3f at 888 (evaluation

6   form); Hert, 24 F.Supp.2d ("the form").

7        Because, as discussed above, the case law and the ALJ in the instant case all define a "moderate"

8   mental limitation as one under which the individual still could function satisfactorily, and the definition

9   is derived from a Social Security form rather than the views of experts that are not required to comply

10  with Social Security rules and regulations, the undersigned finds that the ALJ did not err in defining

11  "moderate," or questioning the vocational expert and deciding the case based on his definition of

12  moderate.

13       IT IS HEREBY ORDERED THAT:

14       1.   Plaintiff's complaint is DENIED;

15       2.   Judgment be ENTERED in favor of defendant Michael J. Astrue and against Plaintiff Lester

16  Lawshea; and

17       3.   The Clerk of this Court is DIRECTED to close this case.

18

19  IT IS SO ORDERED.

20  Dated:   **September 17, 2007**                  **/s/ Theresa A. Goldner**

                                           UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28   60 F.3d 1428, 1435 (9th Cir. 1995) (ALJ may take administrative notice of reliable job information) (quotations and citations omitted).